**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| IONA LEVETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CIVIL ACTION NO.** |
| | ) **3:06-cv-00052-MHT** |
| AMERICAN INTERNATIONAL GROUP, INC.; | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

**COME NOW** Defendants American General Financial Services of Alabama, Inc., in and of itself and as successor to American General Finance, Inc., an Alabama corporation, Merit Life Insurance Company, and Yosemite Insurance Company (hereinafter collectively referred to as the "Defendants"), by and through their undersigned counsel, appearing specially so as to preserve any and all defenses available under Rule 12 of the Federal Rules of Civil procedure, and specifically preserving the right to seek arbitration pursuant to 9 U.S.C. § 1, *et seq.*, and hereby submit this opposition to Plaintiff's motion to remand.  In support thereof, Defendants state as follows:

**I. INTRODUCTION**

Plaintiff commenced the present action on December 13, 2005 by filing a complaint in the Circuit Court of Macon County, Alabama, alleging certain putative misconduct with respect to the refinancing of consumer loans and the sale of credit insurance in connection with said loans.  Upon commencement, this lawsuit immediately joined the long line of boilerplate consumer finance actions recently filed by Plaintiff's counsel in Alabama and Tennessee.  These

1439728

Alabama and Tennessee matters, in turn, follow on the heels of innumerable lawsuits Plaintiff's counsel has filed in Mississippi over the past several years, each fraudulently joining non-diverse defendants for the purpose of avoiding diversity jurisdiction.[1]  Federal courts in Mississippi, recognizing the attempt by the plaintiffs' bar to avoid diversity jurisdiction by fraudulently joining such defendants, have repeatedly denied remand, exercised diversity jurisdiction, and ultimately granted summary judgment for the defendants in like matters.[2]

In the present action, Plaintiff has concocted a slightly different set of allegations specially designed to defeat Defendants' valid fraudulent joinder argument and avoid the deserved fate of the aforementioned Mississippi plaintiffs.  (See Plaintiff's Complaint, ¶¶ 13-22).  Specifically, Plaintiff asserts that Lamar Harris (the "Non-Diverse Defendant") misrepresented that credit insurance was a "good deal" and that purchasing such insurance would improve both her credit score and her chances of being approved for the loans in question.  (Plaintiff's Complaint, ¶¶ 13, 15).  Moreover, Plaintiff alleges that the Non-Diverse Defendant misrepresented to her that refinancing and consolidating prior debt would save her money.  (Plaintiff's Complaint, ¶ 14).  Based on these allegations, Plaintiff appears to assert the following individual causes of action with respect to loans obtained on or about December 16, 1998 and December 14, 2000: (1) fraudulent misrepresentation and/or concealment; (2) negligent misrepresentation; (3) negligent and/or wanton hiring, training, and supervision; and (4) breach of fiduciary duties.

---

[1]  The complete list of the lawsuits filed by Plaintiff's counsel against Defendants in Mississippi, Tennessee, and Alabama is too voluminous to include in this Memorandum.  As a result, Defendants have set forth the list in a separate document, attached hereto as Exhibit "A."

[2]  The consumer finance lawsuits in Mississippi in which federal courts have denied remand, and in some instances granted summary judgment for the defendants, is too voluminous to include in this Memorandum.  As a result, Defendants have set forth the list in a separate document, attached hereto as Exhibit "B."

On or about January 18, 2006, Defendants removed the present action to this Court on diversity and federal question jurisdiction grounds under 28 U.S.C. 1331, 1332, and 1441. Defendants specifically demonstrated in their Notice of Removal that diversity jurisdiction exists in the present action because the amount in controversy exceeds $75,000 and because the Non-Diverse Defendant has been fraudulently joined. Defendants also demonstrated that the present action necessarily involves substantial and disputed federal issues, and that, accordingly, this Court has embedded federal question jurisdiction. On or about February 13, 2006 Plaintiff filed a Motion to Remand arguing against the existence of diversity and federal question jurisdiction. For the reasons demonstrated below, Plaintiff's contentions are completely unfounded, and her Motion to Remand is due to be denied.[3]

## II. DIVERSITY JURISDICTION ARGUMENT

Federal district courts have jurisdiction over civil actions where there is complete diversity among the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Though diversity jurisdiction generally mandates that "every plaintiff . . . be diverse from every defendant," Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996), this requirement is abandoned in instances of fraudulent joinder. In fact, federal courts in Alabama have specifically held that "[w]hen a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether a case is removable based

---

[3] It bears noting that the present action is distinguishable from those previously remanded in Mary Cope v. American International Group, Inc., et al., Civil Action No. 3:05-cv-751-WHA; Stephanie Mayberry v. American International Group, Inc., et al., Civil Action No. 3:05-cv-773-WHA; and Joe T. Smith v. American International Group, Inc., et al. Specifically, this matter involves loans that are older than those at issue in Mayberry and Smith, which gives rise to the application of laches in this matter, and far greater weight to the statute of limitations defense. Moreover, Defendants' opposition to remand in the present action contains several additional arguments establishing that Plaintiff has no possibility of recovery against the Non-Diverse Defendant. As such, this Court's remand of the Cope, Mayberry, and Smith matters should have no bearing on its analysis of the present action.

upon diversity jurisdiction." <u>Bullock v. United Benefit Ins. Co.</u>, 165 F. Supp. 2d 1255, 1256 (M.D. Ala. 2001)(citing <u>Tapscott</u>, 77 F.3d at 1360.).

Fraudulent joinder occurs where "there is no possibility that the Plaintiff can prove a cause of action against the resident (non-diverse) defendant." <u>Fowler v. Provident Life and Accident Insurance Co.</u>, 256 F. Supp. 2d 1243, 1246 (N.D. Ala. 2003)(citing <u>Triggs v. John Crump Toyota, Inc.</u>, 154 F.3d 1284, 1287 (11th Cir. 1998)).   That having been said, it is clear that the Non-Diverse Defendant has been fraudulently joined in the present action as Plaintiff's claims against him are time-barred by the applicable statute of limitations, barred by the doctrine of laches, and substantively meritless.   Thus, his Alabama citizenship should be disregarded, creating complete diversity between the Plaintiff and all properly joined Defendants.   In addition, Defendants have provided more than sufficient evidence to support their contention that the amount in controversy exceeds $75,000.   As such, both diversity jurisdiction requirements have been satisfied, and Plaintiff's Motion to Remand is due to be denied.

**A.    The Non-Diverse Defendant Has Been Fraudulently Joined as to All Claims Relating to Plaintiff's December 14, 2000 Loan Because He Was Not Employed by Defendants at the Time of Said Loan.**

The Non-Diverse Defendant could not have possibly made any misrepresentations in connection with Plaintiff's December 14, 2000 loan because his employment with Defendants ended in July of 1999.  (<u>See</u> the Affidavit of Robert Ritter, attached hereto as Exhibit "C").  In fact, a perfunctory review of Plaintiff's December 14, 2000 loan documents quickly reveals that the Non-Diverse Defendant had no involvement in said loan.  (Plaintiff's loan documents are attached to the Affidavit of Robert S. Ritter, which authenticates said documents, as Exhibit "C(1).").  As such, it is clear that the Non-Diverse Defendant was fraudulently joined as to all claims relating to Plaintiff's December 14, 2000 loan.  Even if this were not the case, which it is,

the following sections offer a multitude of additional reasons why the Non-Diverse Defendant has been fraudulently joined as to all claims herein.

**B.    The Non-Diverse Defendant Has Been Fraudulently Joined Because Plaintiff's Claims Against Him are Barred by the Applicable Statute of Limitations.**

**1.    Plaintiff's Fraud-Based Claims are Time-Barred.**

Plaintiff's fraud-based claims against the Non-Diverse Defendant are governed by a two-year statute of limitations.  See, e.g., Ex parte American General Finance, Inc., 795 So. 2d 685, 686-87 (Ala. 2000); Lott v. Tarver, 741 So. 2d 394, 397 (Ala. 1999); Liberty Nat'l Life Ins. Co. v. Parker, 703 So. 2d 307, 308 (Ala. 1997).  Because Plaintiff's claims relate to loans obtained in 1998 and 2000, said claims are clearly time-barred on their face by this two-year statute of limitations.  Plaintiff presumably seeks to avoid this bar under the "savings clause" contained in ALA. CODE § 6-2-3, which states that "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."  As demonstrated below, however, the "saving clause" does not apply in the present action to salvage Plaintiff's claims against the Non-Diverse Defendant.

**a.    Plaintiff Has Failed to Allege the Facts and/or Circumstances that Prevented Her From Discovering the Alleged Fraud Within the Limitations Period.**

The Alabama Supreme Court has consistently held that where a complaint alleging fraud is facially time-barred, said complaint cannot be salvaged by the "savings clause" unless it **specifically** alleges the facts and/or circumstances that prevented the plaintiff from discovering the alleged fraud within the limitations period.  See Smith v. National Sec. Ins. Co., 860 So.2d 343, 347 (Ala. 2003)("[plaintiff's] complaint 'fails to allege any of the facts or circumstances by

which the appellees concealed the cause of action or injury,' and 'fails to allege what prevented [plaintiff] from discovering facts surrounding the [fraud]. . . .' [Plaintiff's] general reference to the alleged fraud as being 'of a continuing nature' is wholly lacking in specificity and equally deficient as a means of saving the action from the bar of the statute of limitations appearing on the face of the complaint.")(citations omitted); <u>Miller v. Mobile County Board of Health</u>, 409 So.2d 420 (Ala. 1981)(same).  Indeed, just last month, the Circuit Court of Lee County, Alabama granted summary judgment for these very Defendants in a case filed by Plaintiff's counsel, wherein it noted that "a Plaintiff **MUST** plead certain issues before they can be granted the extension of the 2 year statute of limitations for fraud established by § 6-2-38(l), *Code of Alabama*, (1975) as amended."  <u>See</u> the Court's Order in <u>American General Finance, Inc. v. Calvin Quarles, Jr. and Elsie Quarles</u>, Case No. CV-04-380, at p. 18 (Circuit Court of Lee County, Ala. January 24, 2006)(emphasis in original)(attached hereto as Exhibit "D").   The Court found in <u>Quarles</u> that the plaintiffs failed to establish in their complaint and subsequent pleadings "what prevented them from discovering the alleged fraud before the bar of the statute was complete or any other issues which are required before the provisions of the 'savings clause' provided by § 6-2-3, *Code of Alabama*, (1975), as amended, to be provided to them."  (Ex. D, at pp. 18-19).

As in <u>Quarles</u>, Plaintiff in the present action has utterly failed to demonstrate what prevented her from discovering the alleged fraud before the statute of limitations expired, noting only that she "discovered the fraud within two (2) years of filing this lawsuit," (Plaintiff's Complaint, ¶ 19), but failing to provide the specific facts or circumstances that prevented her from discovering the alleged fraud within the limitations period.  As such, Plaintiff cannot

invoke the "savings clause" under ALA. CODE § 6-2-3, and her fraud-based claims against the Non-Diverse Defendant are time-barred by the applicable statute of limitations.

**b.    Plaintiff Received Documents in Connection With Her Loans That Provided Notice of Her Alleged Fraud Claims.**

As demonstrated above, fraud claims accrue and the two year limitations for such claims begins to run "when the plaintiff discovers the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care." Fabre v. State Farm Mut. Auto. Ins. Co., 624 So. 2d 167, 168 (Ala. 1993). Accord Lott v. Tarver, 741 So. 2d at 397; K & C Dev. Corp. v. AmSouth Bank, N.A., 597 So. 2d 671, 676 (Ala. 1992). Contrary to Plaintiff's contentions, however, fraud is not discoverable only in those instances where documents received directly contradict representations made. Rather, "the limitations period begins to run when the plaintiff was privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.'" Gilmore v. M & B Realty Co., L.L.C., et al., 895 So.2d 200, 209 (Ala. 2004) (quoting Auto-Owners Ins. Co. v. Abston, 822 So.2d 1187, 1195 (Ala. 2001)). See also Jefferson County Truck Growers Ass'n v. Tanner, 341 So.2d 485, 488 (Ala. 1977) ("It is sufficient to begin the running of the statute of limitations that facts were known that would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry."). Indeed, the Middle District of Alabama in Bullock v. United Ben. Ins. Co., 165 F.Supp.2d 1255, 1258 (M.D. Ala. 2001)(emphasis added) stated that fraud claims accrue upon the "receipt of a document or contract alerting the plaintiff to the **possibility** of fraud. . . ."

In the present action, Plaintiff advances a variety of allegations specially designed to avoid a finding that she should have discovered her fraud claims upon receiving her loan documents. (See Plaintiff's Complaint, ¶¶ 13-22). Specifically, Plaintiff asserts that the Non-

Diverse Defendant misrepresented that credit insurance was a "good deal" and that purchasing such insurance would improve both her credit score and her chances of being approved for the loans in question. (Plaintiff's Complaint, ¶¶ 13, 15). Plaintiff further alleges that the Non-Diverse Defendant misrepresented to her that refinancing prior loans would save her money. (Plaintiff's Complaint, ¶ 14). Plaintiff, however, signed loan documents in connection with her loans that contained language at odds with these alleged oral statements, and from which Plaintiff should have discovered her alleged fraud claims. (See Ex. C(1)).

Plaintiffs' loan documents disclosed all of the relevant financial terms for her loans, including but not limited to, the amount financed, the finance charge, the total of payments, the total number of payments, the interest rate, the amount of monthly payment, and all costs associated with obtaining credit. (See Ex. C(1)). This was more than enough information for Plaintiff to determine whether refinancing prior loans would save her money, especially since Plaintiff also had access to the financial terms of any prior American General loan being refinanced. Similarly, Plaintiff's loans clearly disclosed the premiums for all insurance products purchased therein. (See id.). This was more than enough information for Plaintiff to determine whether purchasing Defendants' insurance products was, in fact, a "good deal." As such, Plaintiff should have discovered any claims related to the Non-Diverse Defendant's alleged misrepresentations that refinancing prior loans would save her money and that purchasing credit insurance was a good deal at the time of the loans at issue.[4]

---

[4] As demonstrated herein below at pgs. 14-15, Plaintiff should have also discovered any claims related to the Non-Diverse Defendant's alleged misrepresentations that refinancing prior loans would save her money and that purchasing credit insurance was a good deal at the time of her loans because said misrepresentations were little more than sales talk or "puffery." See BellSouth Mobility, Inc. v. Cellulink, Inc., 814 So.2d 203, 217 (Ala. 2001); Fincher v. Robinson Brothers Lincoln Mercury, Inc., 583 So.2d 256, 259 (Ala. 1991); Gable v. Boles, 718 So.2d 68, 70-71 (Ala. Civ. App. 1998). Individuals do not have the right to act upon such sales talk, and

Regarding the optional nature of credit life and/or credit disability insurance, Plaintiff's loan documents specifically stated that such insurance is "not required to obtain credit and will not be provided unless I sign and agree to pay the additional cost." (Id.). Moreover, Plaintiff's December 14, 2000 loan documents provided **"[y]ou understand that credit insurance is not required in connection with this loan and was not a factor in the approval of the extension of credit, and that you may obtain such insurance, if you want it, from any person you choose."** (Id.)(emphasis added). Finally, both of Plaintiff's loan disclosed that credit life and/or credit disability insurance may be canceled within a certain amount of time after the date of the loan and that "[u]pon cancellation, a full rebate of the credit insurance premiums paid for this coverage will be made." (Id.).

With respect to the optional nature of personal property insurance, Plaintiff's loan documents stated:

> You are not required to purchase property insurance on your household goods to secure this loan. If you choose to have such insurance, you may obtain the insurance from anyone you want. You should consider any homeowner's or other insurance which you may already have when deciding to purchase insurance with this loan.[5]

(Id.). Plaintiff loan documents also disclosed that any personal property insurance purchased could be canceled with a full refund within a certain amount of days of the loan at issue. (See id.). Finally, Plaintiff's loans contained the following disclosure above a description of the insurance products purchased: "**I FULLY UNDERSTAND THAT I DO NOT HAVE TO**

---

any misrepresentations resulting therefrom will not support a claim of fraud. Fincher, 583 So.2d at 259.

[5] Note that Plaintiff only purchased credit property insurance in connection with his December 14, 2000 loan.

PURCHASE ANY OF THE FOLLOWING INSURANCE TO GET MY LOAN." (Id.)(emphasis in original).

The above insurance disclosures clearly "alert[ed] Plaintiff to the possibility of fraud" regarding the Non-Diverse Defendant's alleged misrepresentations that purchasing credit insurance would improve both her credit score and her chances of being approved for the loans in question even though they did not directly contradict said misrepresentations. See Bullock, 165 F.Supp.2d at 1258. In fact, in Sealey v. CitiGroup, Inc., et al., Civil Action No. 03-B-3003-W (N.D. Ala. Aug. 31, 2004)(attached hereto as Exhibit "E")(emphasis added), the Honorable Judge Sharon Lovelace Blackburn of the United States District Court for the Northern District of Alabama specifically held that **"plaintiffs could not believe that the purchase of credit insurance improved their chances for loan approval if (1) the credit life insurance was not required to obtain the loan and even if they purchased such insurance, (2) they could cancel the insurance at any time."** The same naturally holds true with respect to the similar misrepresentation that purchasing credit insurance improves credit scores/ratings. As such, Plaintiff should have discovered any claims related to the Non-Diverse Defendant's alleged misrepresentations that purchasing credit insurance would improve both her credit score and her chances of being approved for the loans in question at the time she obtained said loans.

Because Plaintiff had notice of her fraud claims against the Non-Diverse Defendant on the dates of her respective loan closings, said claims accrued, and the two-year statute of limitations began to run, from these various dates. Fabre v. State Farm Mut. Auto. Ins. Co., 624 So.2d 167, 168 (Ala. 1993). Accord Lott v. Tarver, 741 So.2d at 397; K & C Dev. Corp. v. AmSouth Bank, N.A., 597 So.2d 671, 676 (Ala. 1992). Plaintiff, however, did not file the present action until December 13, 2005, **approximately five years** after the last loan at issue.

As such, Plaintiff's fraud claims against the Non-Diverse Defendant are time-barred by the applicable two year statute of limitations.

### 2.    Plaintiff's Negligence-Based Claims are Time-Barred.

Plaintiff's negligence-based claims against the Non-Diverse Defendant are similarly governed by a two year statute of limitations.[6] The law in Alabama is well settled that causes of action for negligence and wanton misconduct accrue, and the two-year statute of limitations begins to run, as soon as "the plaintiff can first maintain the action." Booker v. United American Ins. Co., 700 So. 2d at 1339. Accord Ex parte Burnham, Klinefelter, Halsey, Jones & Cater, P.C., 674 So. 2d 1287, 1289 (Ala. 1995); Cofield v. Smith, 495 So. 2d 61, 62 (Ala. 1986). A plaintiff is entitled to "maintain an action" when the party "suffers an injury or a loss or damage." Jones v. Blanton, 644 So. 2d 882, 887 (Ala. 1994) Thus, the statute begins to run at this initial point "regardless of whether the full amount of damage is apparent at the time of the first injury. Booker, 700 So. 2d 1339.

In Booker, plaintiffs brought suit against an insurance company and others for negligence, wanton misconduct, fraudulent misrepresentation, and fraudulent suppression arising out of their purchase of an insurance policy after the agent "made various misrepresentations to them." 700 So. 2d at 1334. The trial court granted the defendants' motion for summary judgment on all of plaintiffs' claims. Id. The Alabama Supreme Court affirmed the trial court's judgment in its entirety. Id. at 1340. In holding that the plaintiffs' negligence and wanton misconduct claims were barred by the two-year limitations period, the Supreme Court stated:

> It is well settled that a negligence cause of action accrues when the plaintiff can first maintain the action, regardless of whether the full

---

[6] Because no specific limitations period is prescribed for Plaintiff's negligence claims, they are also governed by the general, two year statute of limitations period outlined in ALA. CODE § 6-2-38(l).

> amount of damage is apparent at the time of the first injury. In
> Henson, 621 So. 2d at 1271, 1274, this Court held that the
> plaintiff's completion of an application for a health insurance
> policy started the running of the two-year limitations period for a
> negligence action. . . . In this case, as in Henson, 621 So. 2d at
> 1274, . . . any negligence or wantonness on the part of Stone or
> United American occurred, at the latest, in May 1991, when the
> Bookers signed the application and wrote the check for the policy.
> Thus, their claims accrued in May 1991. Because the Bookers
> filed their complaint in August 1993 — over two years after their
> claims accrued — their negligence and wantonness claims are
> time-barred.

Id. at 1339-40.

In the present action, Plaintiff alleges that the Non-Diverse Defendant's negligence and

wanton conduct resulted in, among other things, her having to pay for additional interest,

insurance, and fees. (See Plaintiff's Complaint, ¶ 26). These alleged injuries were first incurred

at the time of her respective loan closings. As such, Plaintiff's negligence-based claims against

the Non-Diverse Defendant accrued, and the two-year statute of limitations began to run, from

the various dates of her loan closings because it was then that Plaintiff would have first suffered

a legal injury for which she would have been entitled to maintain a cause of action. See Booker,

700 So. 2d at 1339; Jones v. Blanton, 644 So. 2d at 887. Plaintiff, however, did not file the

present action until December 13, 2005, **approximately five years** after the last loan at issue.

As such, Plaintiff's negligence-based claims against the Non-Diverse Defendant are time-barred

by the applicable two year statute of limitations.

### C.    The Non-Diverse Defendant Has Been Fraudulently Joined Because Plaintiff's Claims Against Him are Barred by the Doctrine of Laches.

Even if the Court finds that Plaintiff's claims against the Non-Diverse Defendant survive

the above statute of limitations analysis, said claims are barred by the equitable doctrine of

laches. See Ford v. Jackson Square, Ltd., 548 So.2d 1007, 1015 (Ala. 1989)("[Laches] operates

independently of any statute of limitations."). Laches is defined as "neglect to assert a right or a

claim that, taken together with a lapse of time and other circumstances causing disadvantage or prejudice to the adverse party, operates as a bar." Id. at 1014. In short, it is "designed to prevent unfairness to a defendant due to a plaintiff's delay in filing suit." Id. at 1014-15. "Classic, examples of undue prejudice, for purposes of determining the applicability of the doctrine of laches, include the unavailability of witnesses, changed personnel, and the loss of pertinent records." Ex parte Grubbs, 542 So.2d 927, 929 (Ala. 1989)(citing Equal Employment Opportunity Commission v. Dresser Industries, Inc., 668 F.2d 1199 (11th Cir. 1982)).

Several of these indicia of prejudice exist in the present action. First and foremost, the Non-Diverse Defendant cannot be expected to recall the specifics of a loan that he was involved with more than seven years ago. As such, the testimony of the most important witness in this action has been compromised by the extensive time lapse. Moreover, there have been numerous personnel changes at the Auburn branch where Plaintiff obtained his 1998 and 2000 loans. In fact, none of the individuals employed at the Auburn branch during Plaintiff's 1998 and 2000 loans are still employed there today. (See Ex. C).

Given the above, it is clear that the amount of time that has passed since Plaintiff's loans has resulted in significant personnel changes at American General's Auburn branch and will likely result in memory loss for the relevant witnesses. It is equally clear that these events severely prejudice the Non-Diverse Defendant's ability to defend against Plaintiff's claims. As such, the doctrine of laches applies in the present action to bar Plaintiff's claims against the Non-Diverse Defendant.

**D.**   **The Non-Diverse Defendant Has Been Fraudulently Joined Because Plaintiff's Claims Against Him Fail as a Matter of Law.**

In addition to the procedural bars outlined above, Plaintiff cannot substantively prove her claims against the Non-Diverse Defendant for the following reasons and, as such, said Defendant has been fraudulently joined in the present action.

**1.**   **Plaintiff's Claims Related to the Non-Diverse Defendant's Alleged Misrepresentations that Purchasing Credit Insurance is a Good Deal and that Refinancing Prior Loans Saves Money are Not Actionable Because Said Misrepresentations are Sales Talk or Puffery.**

The Alabama Supreme Court has long held that a claim for fraud must be based on "representations of fact and not mere statements of opinion amounting to nothing more than sales talk or 'puffery.'" Gable v. Boles, 718 So.2d 68, 70-71 (Ala. Civ. App. 1998). See also BellSouth Mobility, Inc. v. Cellulink, Inc., 814 So.2d 203, 217 (Ala. 2001)(same); Fincher v. Robinson Brothers Lincoln Mercury, Inc., 583 So.2d 256, 259 (Ala. 1991)("[S]tatement of opinion amounting to nothing more than 'puffery' . . . are not statements concerning material facts upon which individuals have a right to act and, therefore, will not support a fraud claim.").

The Court has repeatedly found that vague representations related to the expected performance and condition of a product constitute such sales talk and are not actionable under a fraud theory. See Scoggin v. Listerhill Employees Credit Union, 658 So.2d 376 (Ala. 1995)(seller's statements that a vehicle was "a good car" or was "in good shape" were deemed sales talk and/or puffery.); Hughes v. Hertz Corp., 670 So.2d 882 (Ala. 1995)(seller's statement that vehicle was a "fine car" was not a misrepresentation of material fact but a mere statement of opinion.); Young v. Serra Volkswagen, Inc., 579 So.2d 1337 (Ala. 1991)(statement that a vehicle "was as good as a new car" constituted mere sales talk or puffery.); Pell City Wood, Inc. v. Forke Bros. Auctioneers, Inc., 474 So.2d 694 (Ala. 1985)(statement that trucks were "in good

condition" and that "the trucks are ready to work tomorrow" was auctioneer's opinion and did not rise to the level of express warranty.).

The Court has also found that vague and ill-defined promises are not the type of statements that will support a fraud claim. See Cellulink, 814 So.2d at 217 (corporation's prior statement to a terminated agent that it was "committed to its agents" was puffery and would not support a fraud claim.); American Pioneer Life Ins. Co. v. Sherrard, 477 So.2d 287, 291 (Ala. 1985)(underwriter's representation to an investor that his idea for a combined annuity/mortgage protection project was the underwriter's "number one priority" was mere puffery and would support a fraud claim.).

Given the above, the Non-Diverse Defendant's alleged representation that purchasing credit insurance was a "good deal" and "offered great value and protection" is clearly a statement of opinion and, as such, is not actionable under a fraud theory.  Similarly, the Non-Diverse Defendant's alleged representation that refinancing prior loans would be the "best way for [Plaintiff] to save money" is a vague and ill-defined promise that cannot possibly support a fraud claim.  As such, Plaintiff's claims related to these alleged misrepresentations are nothing more than sales talk or puffery and, consequently, cannot support a cause of action in fraud.

### 2.    Plaintiff's Fraudulent Misrepresentation Claims Fail as a Matter of Law for Want of Reasonable Reliance.

In Alabama, recovery under a fraud theory necessitates a showing that the plaintiff "reasonably relied" upon the alleged misrepresentations. See Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997).  Under this standard, "[i]f the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts," then the plaintiff's reliance on the alleged misrepresentations was not reasonable, and "the plaintiffs should not recover." Massey Automotive, Inc. v. Norris, 895 So.2d 215, 220 (Ala.

2004) (quoting <u>Torres v. State Farm Fire & Casualty Co.</u>, 438 So.2d 757, 759 (Ala. 1983)). Thus, this reasonable reliance inquiry is virtually identical to the above analysis regarding discovery of fraud claims for statute of limitations purposes, and its outcome should likewise favor the Non-Diverse Defendant.

As stated above, Plaintiff advances a variety of allegations specially designed to avoid a finding that she should have discovered the Non-Diverse Defendant's alleged misrepresentations upon receiving her loan documents -- a finding that would negate the reasonableness of her reliance upon said misrepresentations. (<u>See</u> Plaintiff's Complaint, ¶¶ 13-22). Unfortunately for Plaintiff, however, her loan documents *do*, in fact, contain language at odds with the Non-Diverse Defendant's alleged misrepresentation and, as such, *do* negate the reasonableness of any reliance thereon. (<u>See</u> Ex. C(1)).

Specifically, Plaintiff's loan documents provided more than enough information for her to determine whether refinancing prior debt would save her money and whether purchasing credit insurance was a good deal. (<u>See id.</u>). Similarly, Plaintiff's loan documents fully disclosed that purchasing credit insurance was not required and would not be a factor in the extension of credit and that such insurance could be cancelled within a certain amount of days of the loan for a full refund. (<u>See id.</u>). Given these disclosures, "plaintiff[] could not believe that the purchase of credit insurance improved [her] chances for loan approval" or, in turn, her credit score/rating. (Ex. E). Thus, Plaintiff did not reasonably rely upon the Non-Diverse Defendant's alleged misrepresentations, and her fraudulent misrepresentation claims against said Defendant necessarily fail as a matter of law.

### 3.    Plaintiff's Fraudulent Suppression Claims Against the Non-Diverse Defendant Fail as a Matter of Law.

Plaintiff's fraudulent suppression claims against the Non-Diverse Defendant similarly fail as a matter of law.  At the outset, such claims are completely negated by Plaintiff's loan documents, which, as demonstrated above, put Plaintiff on notice of the information allegedly suppressed.  Moreover and as demonstrated in detail below, the Non-Diverse Defendant had no duty to disclose the information allegedly suppressed.

Fraudulent suppression claims such as the one at hand require a showing that the defendant in question had a duty to disclose the suppressed facts.  Ex parte Ford Motor Credit Co. v. Adamson Ford, Inc., 717 So.2d 781, 785-86 (Ala. 1997) (citing Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 63 (Ala. 1996); Gewin v. TCF Asset Mgmt. Corp., 668 So.2d 523 (Ala. 1995)).    In the absence of a special confidential relationship or other special circumstances, the general creditor-debtor relationship does not impose a fiduciary duty requiring disclosure of certain information.  Id. at 786-87 (citing Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985); Baylor v. Jordan, 445 So.2d 254 (Ala. 1984)).  Where parties are engaged in arms-length commercial transactions and are fully capable of protecting their own interests, "Alabama common law imposes no duty to disclose unless the information is requested."  Id. at 787 (citing Gewin, supra; Altmayer v. City of Daphne, 613 So.2d 366 (Ala. 1993); Bama Budweiser of Montgomery, Inc. v. Anheuser Busch, Inc., 611 So.2d 238 (Ala. 1992)).

In fact, the Alabama Court of Appeals has previously addressed allegations similar to those advanced by Plaintiff and determined that a finance company cannot be held liable for suppression.  In Williams v. Norwest Financial Alabama, Inc., 723 So. 2d 97 (Ala. Civ. App. 1998), the plaintiff contended that defendant Norwest Financial Alabama, Inc. ("Norwest") committed fraud by failing to disclose to the plaintiff that financing alternatives existed which

were less expensive than the complete refinancing of plaintiff's loans. The plaintiff argued that the finance company required its customers to refinance existing loans rather than allowing them to obtain new and separate loans. Id. at 104. The trial court, however, concluded that those claims were not actionable under Alabama law, and, therefore, entered summary judgment in favor of the defendant. On appeal, the Alabama Court of Civil Appeals affirmed.

At the outset, the Court held that "nothing prohibits the refinancing or consolidation of an existing loan with a subsequent loan." Id. Next, the Court determined that Norwest had no duty to disclose the effects of an alternative to the refinancing of plaintiff's existing loan. Specifically, the Court stated that:

> [N]o evidence exists that would give rise to a confidential relationship between the parties. [Plaintiff] had previously dealt with Norwest on a number of occasions; however, prior business contact alone does not give rise to a confidential relationship. (citation omitted). Nothing in the record indicates that the transaction complained of was anything other than an arm's length transaction between the parties. Accordingly, we conclude that the summary judgment was properly entered in favor of Norwest on this count.

Id. Accord, Mitchell v. Industrial Credit Corp., 898 F. Supp. 1518, 1535 (N.D. Ala. 1995) (applying Alabama law and holding that a finance company did not have a duty to disclose to plaintiff that it "would profit from the sale of [credit] insurance or that [credit insurance] might be available elsewhere at a lower price."). In this matter, as in Williams, there is absolutely no evidence of a "special relationship" between the parties. Thus, the Non-Diverse Defendant had no duty to disclose the information allegedly suppressed, and Plaintiff's claims to the contrary fail as a matter of law.

### 4.    Plaintiff's Breach of Fiduciary Duties Claims Against the Non-Diverse Defendant Fail as a Matter of Law.

Plaintiff cannot possibly assert a cause of action for breach of fiduciary duties against the Non-Diverse Defendant because no such duty existed between them.  As demonstrated above, it is well settled that, in the absence of a special confidential relationship or other special circumstances, the general creditor-debtor relationship does not impose fiduciary duties on the creditor.  Ex parte Ford Motor Credit Co. v. Adamson Ford, Inc., 717 So.2d 781, 786-87 (Ala. 1997)(citing Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985); Baylor v. Jordan, 445 So.2d 254 (Ala. 1984)).  With that said, there is absolutely no evidence that Plaintiff and the Non-Diverse Defendant enjoyed a special confidential relationship, the likes of which would impose fiduciary duties on the latter.  As such, Plaintiff's breach of fiduciary duties claims against the Non-Diverse Defendant necessarily fail as a matter of law.

### 5.    Plaintiff's Negligent and/or Wanton Hiring, Training, and Supervising Claims Against the Non-Diverse Defendant Fail as a Matter of Law.

Finally, Plaintiff's negligent and/or wanton hiring, training, and supervising claims against the Non-Diverse Defendant fail as a matter of law.  It is axiomatic that such claims can only be asserted against an **employer** in connection with the alleged misconduct of an employee. See Bridges v. Principal Life Ins. Co., 141 F.Supp.2d 1337, 1340 n. 3 (M.D. Ala. 2001)(noting that claims of negligent supervision must necessarily be brought against the insurer and not against the insurer's agent).  In the present action, however, the Non-Diverse Defendant was an individual employee of the corporate Defendants.  As such, Plaintiff cannot possibly prevail on a claim for negligent and/or wanton hiring, training, and supervising against the Non-Diverse Defendant.

**E.    The Fifth Circuit's Decision in _Smallwood_ is Not Applicable in the Present Action.**

Defendants anticipate that Plaintiff will argue that their basis for fraudulent joinder is "really an attack on the merits of the entire case" and, as such, fails under the Fifth Circuit's _en banc_ decision in <u>Smallwood v. Illinois Cent. R.R. Co.</u>, 385 F.3d 568 (5th Cir. 2004).[7]  In <u>Smallwood</u>, the Fifth Circuit adopted a "common defense" exception—that is, an exception whereby a finding of improper joinder may not be based on a defense that is common to all defendants and necessarily dispositive of all claims against all defendants.  <u>Id.</u> at 574-75. Accordingly, where defendants seek to prove improper joinder by demonstrating the plaintiff's inability to recover against the in-state defendants:

> [a] showing that the plaintiff's case is barred as to all defendants is not sufficient. When the **only** proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, **and that showing is equally dispositive of all defendants** rather than to the in-state defendants alone, the requisite showing has not been made.

<u>Id.</u> at 575 (emphasis added).

Significantly, the Eleventh Circuit has not applied the "common defense" exception in its fraudulent joinder analysis, and, as previously demonstrated, requires only that there be no

---

[7] It bears noting that the present action is distinguishable from <u>Tony and Dorothy Turner v. American International Group, Inc., et al.</u>, Civil Action No. 3:05-cv-753-MHT; <u>Bernice Poole-Reese v. American International Group, Inc., et al.</u>, Civil Action No. 3:05-cv-750-MHT; and <u>James Poole v. American International Group, Inc., et al.</u>, Civil Action No. 3:05-cv-749-MHT, all of which were ostensibly remanded under the "common defense" doctrine outlined in <u>Smallwood</u>.  In actuality, the Court predicated its remand of the above matters on the fact that Defendants failed to respond to Plaintiff's "common defense" argument, not that the argument itself was necessarily applicable.  Defendants currently have pending motions to alter or vacate the remand orders in <u>Turner</u>, <u>Poole-Reese</u>, and <u>Poole</u> on the grounds that they were not given an opportunity to address the "common defense" argument.   As witnessed above, however Defendants are affirmatively and conclusively responding to Plaintiff's potential "common defense" argument in the present action.  As such, this Court's remand of the <u>Turner</u>, <u>Poole-Reese</u>, and <u>Poole</u> matters should have no bearing on its analysis of the present action.

possibility of recovery against the resident defendant for a finding of fraudulent joinder.  See

Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2005) (citing Triggs v. John

Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998); Coker v. Amoco Oil, Co., 709 F.2d

1433, 1440 (11th Cir. 1983)).  As such, the "common defense" exception does not apply to the

present action, and this Court should not consider it in its fraudulent joinder analysis.

Even if applied by the Eleventh Circuit, the "common defense" exception affects only a

very small class of cases. As the Fifth Circuit explained in Smallwood:

> [O]ur holding today is narrow. It applies only in that limited range
> of cases where the allegation of improper joinder rests **only** on a
> showing that there is no reasonable basis for predicting that state
> law would allow recovery against the in-state defendant **and that
> showing is equally dispositive of all defendants**.

Id. at 576 (emphasis added).[8]    The narrow scope of the "common defense" exception was

underscored by the Fifth Circuit's subsequent decision in Rainwater v. Lamar Life Ins. Co., 391

F.3d 636 (5th Cir. 2004).  In a per curiam opinion, the Rainwater panel remanded the case before

it to the district court for further analysis of whether the statute of limitations defense that barred

claims against the in-state defendant was likewise "dispositive of **all** claims against **all**

defendants." Id. at 638. (emphasis in original). According to the Rainwater court, the case before

it "turn[ed] … on whether the limitations defense that disposes of all claims against in-state

---

[8] In Smallwood, the district court found improper joinder on the ground that the claims
against the in-state defendant were preempted by federal law. See id. at 572. Having reached that
conclusion, the court then applied "law of the case" and granted summary judgment for the out-
of-state defendant on the ground that all the remaining claims were preempted as well. Id.  Thus,
in Smallwood, the only basis for improper joinder was a legal defense —preemption—that as a
matter of law also precluded all the claims against the other defendants. In the majority's view,
because the resolution of the claims against the in-state defendant "**necessarily compel[led**] the
same result for the nonresident defendant," then the defendant had shown merely "a lawsuit
lacking in merit," rather than improper joinder. Id. at 574 (emphasis added).

defendants in fact disposes of **all** claims against **all** defendants, as the principle of Smallwood is triggered only when all defendants are reached." Id. (emphasis added).

The "common defense" exception was further limited by the Fifth Circuit's recent decision in Boone v. CitiGroup, Inc., 416 F.3d 382 (5th Cir. 2005), a consumer finance suit with allegations virtually identical to those in the present action. In Boone, consumer borrowers brought suit against a non-resident lender and its corporate affiliates, as well as individual residents of Mississippi for a variety of fraud claims. Id. at 385-86. The defendants removed the action to federal court on the ground that the non-diverse individual defendants had been fraudulently joined. Id. at 388. "In particular, CitiGroup argued that, in light of remand-related discovery, there was no reason to believe that any of [plaintiffs'] claims against the non-diverse [defendants] were timely under Mississippi's three-year statute of limitations." Id. at 388-89. "The district court agreed and denied remand primarily on the ground of limitations." Id. at 389. The plaintiffs appealed the district court's decision and argued that under Smallwood, there was no fraudulent joinder because the statute of limitations, if it precluded their claims against the non-diverse defendants, necessarily precluded their claims against all defendants. Id.

In denying the plaintiffs' appeal, the Fifth Circuit reiterated the narrow reach of Smallwood and the "common defense" exception, as well as their inapplicability to remand motions in consumer finance cases such as the present action:

> [T]he crux of Smallwood II's holding is that "only" where the showing that there is no reasonable basis for predicting state law would allow the plaintiff to recover against the resident defendant is such that the **same** showing "equally" and "necessarily" "compels" the conclusion that recovery is precluded against "all" non-resident defendants, then there is no improper joinder, but simply a wholly meritless suit. That is not the situation here.
>
> Although it is true that the district court denied remand and granted summary judgment on the basis of the same residual statute of limitations, it is not true that the statute of limitations defense

assertion by the resident defendants "equally" and "necessarily" "compel[led]" dismissal of **all** claims against all the diverse defendants.

\*       \*       \*

Appellants underscored at oral argument that their claims against the diverse corporate defendants were not simply premised on vicarious liability for the tortious acts of the three non-diverse individual appellees working for First Family. However, in properly conceding that at least some of their claims against the non-resident defendants are analytically distinct from and in addition to their respondeat superior claims against those defendants based on the wrongs allegedly committed by the resident defendants, appellants have conceded that the failure of their claims against the resident defendants does not in and of itself cause those of which are not based on respondeat superior liability for the wrongs committed by the resident defendants to fail as well.

Id. at 390-92 (emphasis in original).

After Boone, it is clear that a defense precluding recovery against individual resident defendants does not "equally" and "necessarily" preclude recovery against corporate non-resident defendants where at least some of the claims against the corporate non-resident defendants are analytically distinct from and in addition to the claims against the individual resident defendants. Id. With that said, at least one of Plaintiff's claims against the non-resident corporate Defendants in the present action -- the claim for negligent and/or wanton hiring, training, and supervising -- is analytically distinct from and in addition to the claims against the individual Non-Diverse Defendant in that such claims can *only* be asserted against the corporate non-resident Defendants. See Bridges v. Principal Life Ins. Co., 141 F.Supp.2d 1337, 1340 n. 3 (M.D. Ala. 2001)(noting that claims of negligent supervision must necessarily be brought against the insurer and not against the insurer's agent). Thus, even after a finding of fraudulent joinder in the present action, **at least** one claim would necessarily remain for separate disposition against the corporate non-resident Defendants. This case therefore falls outside the exception in

<u>Smallwood</u>, where the finding of improper joinder was followed immediately by the automatic disposition of all remaining claims based on the same legal ruling.[9]

Additionally, the applicable statutes of limitation in the present action apply to each defendant severally, rather than jointly.   <u>See</u> <u>Weinstein v. Sea View, Inc.</u>, 188 F.2d 116, 119 n.6 (5th Cir. 1951).  Accordingly, a court's resolution of claims against one defendant based on the statute of limitations does not necessarily compel the same result with regard to claims against another defendant as required by <u>Smallwood</u>.   Rather, a separate inquiry must be undertaken with regard to each defendant.   For this additional reason, <u>Smallwood's</u> narrow "common defense" exception does not apply to the present action.

### F.    Plaintiff's Counsel Has Manipulated the Pleadings in this and other Like Matters In a Transparent Effort to Avoid Removal.

In addition to the procedural and substantive arguments for fraudulent joinder in the present action, it bears noting that Plaintiff's counsel has manipulated the pleadings in this and other like matters in a transparent effort to avoid removal.   As demonstrated above, Plaintiff's counsel has filed numerous boilerplate lawsuits against Defendants in Mississippi, Tennessee, and Alabama.  (<u>See</u> Ex. A).  Though these lawsuits all involve loans from the same general time period, the Mississippi cases were filed a couple of years prior to the Alabama and Tennessee matters.  In the Mississippi cases, Plaintiff's counsel filed complaints alleging that the plaintiffs

---

[9] <u>E.g.</u>, <u>Queen v. American General Finance, Inc.</u>, 351 F.Supp.2d 576, 578-80 (S.D. Miss. 2005)("After an improper joinder analysis is conducted, the contractual claims against the out of state defendants survive. Those claims are asserted solely against the out of state defendants inasmuch as only the out of state defendants are in privity of contract with the plaintiffs. ...The requirement of a separate analysis of the contractual claims places this case outside the scope of <u>Smallwood</u>. Accordingly, the Court finds that the <u>Rainwater</u> opinion provides the most persuasive analysis. As a result, the plaintiffs' renewed motion for reconsideration is not well-taken"); <u>accord</u> <u>Wingate v. Kerr-McGee Rocky Mountain Corp.</u>, no. 1:04cv513, 2005 WL 161221 at *4 (E.D. Tex. Jan. 26, 2005)(quoting <u>Rainwater</u>, 391 F.3d at 638 (emphasis in original))("<u>Smallwood</u>, however, applies only when *"all* claims against *all* defendants" are barred by a common defense").

were specifically told they had to purchase credit insurance in order to obtain their loans.[10] Several federal courts in Mississippi have since denied motions to remand and are now granting motions for summary judgment in these and other like matters because the plaintiffs' loan documents directly contradict this alleged misrepresentation. (See Ex. B).

As a result, Plaintiff's counsel has filed slightly different complaints in Alabama and Tennessee, alleging that plaintiffs in all of these cases were identically informed by non-diverse defendants that purchasing credit insurance was a good deal, that it would improve their credit score and their chances of being approved for the loans in question, and that refinancing prior debt would be the best way for Plaintiff to save money.[11] (See Plaintiff's Complaint, ¶¶ 13-15). Thus, it is apparent that Plaintiff's counsel has abandoned its previous boilerplate allegations and conjured up new boilerplate misrepresentations in an effort to avoid being directly contradicted by the express language of plaintiffs' loan documents. In fact, Plaintiff's counsel has even gone so far as to amend the few Mississippi lawsuits in which summary judgment has not yet been entered, eliminating the original contention and replacing it with the newly crafted allegation.[12]

---

[10] As an example of the complaints filed in Mississippi, submitted herewith as Exhibit "F" is a true and correct copy of the complaint filed in the lawsuit styled Edward Morgan, et al. v. American International Group, Inc., In the Chancery Court of Jones County, Mississippi, Second Judicial District, Laurel Division, Civil Action Number: 2002-1029.

[11] For an example of the allegations asserted by Plaintiff's counsel in the Tennessee matters, see the complaint filed in the lawsuit styled Beauty Robertson v. American International Group Inc. aka AIG Insurance, et al., In the Circuit Court of Shelby County, Tennessee; CT-4105-05., attached hereto as Exhibit "G".

[12] The Mississippi lawsuits that Plaintiff's counsel has amended in an attempt to avoid a finding of fraudulent joinder include: Brad Gatlin, et al. v. American International Group, Inc., et al., In the Chancery Court of Jones County, Mississippi, Laurel Division, Civil Action Number: CV-2002-1026; Edward Morgan, et al. v. American International Group, Inc., et al., In the Chancery Court of Jones County, Mississippi, Laurel Division, Civil Action Number: CV-2002-1029; Dorothy Corbin, et al. v. American General Financial Services, Inc., et al, In the Circuit Court of Washington County, Mississippi, Civil Action Number: CI2004-216; Stonewall v. American General Finance, Inc., et al., In the Circuit Court of Carroll County, Mississippi,

Set forth below is a comparison of the original allegation in the Mississippi matters and the new allegation, illustrating the effort by Plaintiff's counsel to both avoid remand and salvage these meritless lawsuits:

| Original Allegation | New Allegation |
| --- | --- |
| Contrary to law, Defendants required credit life insurance, credit disability, personal property insurance and/or other insurance in connection with their loans to Plaintiffs. These insurance products were represented by Defendants as a necessary part of the loan package, with all or some of these insurance products misrepresented by Defendants as a necessary prerequisite for the extension of the credit and receipt of the loan. (Ex. F, ¶ 10). | Contrary to law, Defendants fraudulently represented to Plaintiffs that if they purchased the credit life, credit disability and/or personal property insurance then they stood a better chance of getting approved for the loan requested. (Ex. H, ¶ 18). |

Given the above, it is clear that Plaintiff's counsel has manipulated the pleadings in the Alabama, Tennessee, and amended Mississippi lawsuits to avoid a finding that plaintiffs' loan documents contradicted, and thus provided notice of, their fraud claims at the time of the loans in question. Because such a practice will only be encouraged by remanding the present action, Defendants respectfully request that the Court deny Plaintiff's Motion to Remand.

---

Second Judicial District, Civil Action Number: 2004-0011CV2L; Freddie Graham, et al. v. American International Group, Inc., et al., In the Circuit Court of Bolivar County, Mississippi, First Judicial District, Civil Action Number: 2002-333; Alice Brown, et al. v. American International Group, Inc., et al., In the Circuit Court of Leflore County, Mississippi, Civil Action Number: 2002-0173-CICI; Doris Beaman, et al. v. American International Group, Inc., et al., In the Circuit Court of Sunflower County, Mississippi, Civil Action Number: 2002-0638-CI; Beatrice Jackson, et al. v. American International Group, Inc., et al., In the Circuit Court of Sunflower County, Mississippi; Civil Action Number: 2002-0640-CI.

As an example of the amended complaints filed in Mississippi, submitted herewith as Exhibit "H" is a true and correct copy of the amended complaint filed in the lawsuit styled Edward Morgan, et al. v. American International Group, Inc., In the Chancery Court of Jones County, Mississippi, Second Judicial District, Laurel Division, Civil Action Number: 2002-1029.

**G.    Defendants Have Provided Sufficient Evidence to Support Their Contention that the Amount in Controversy Requirement is Satisfied in the Present Action.**

The amount in controversy in the present action exceeds $75,000 notwithstanding Plaintiff's refusal to specify damages. In her complaint, Plaintiff alleges that she has suffered monetary damages, that she "has suffered mental anguish and emotional distress," and that she "has otherwise been injured and damaged." (Plaintiff's Complaint, ¶ 26). Based on these alleged injuries, Plaintiff seeks a "judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus costs." (Id.)

Because Plaintiff seeks an unspecified amount of damages, Defendants are only required to show that "the amount in controversy more likely than not exceeds the jurisdictional requirement." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996). Defendants clearly satisfied this requirement in their Notice of Removal by citing an abundance of Alabama decisions involving similar claims wherein plaintiffs were awarded damages in excess of $75,000.[13] Federal courts in Alabama adjudicating similar claims have repeatedly

---

[13] See e.g. Jeter v. Orkin Exterminating Co., supra, ($2,000,000 punitive damages awarded in fraud and breach of contract matter); Johns v. A.T. Stephens Enterprises, Inc., 815 So. 2d 511 (Ala. 2001) ($150,000 punitive damage award in conspiracy to convert matter); Travelers Indemnity Co. of Illinois & Crawford & Co. v. Griner, 809 So. 2d 808 (Ala. 2001) ($200,000 punitive damage award in fraud and outrage matter); New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2000) ($100,000 punitive damage award in conversion and trespass matter); Sparks v. Cash America International, Inc., 789 So. 2d 231 (Ala. 2000) ($225,000 award of punitive damages in fraud and breach of contract matter); Cooper & Co. v. Lester, 832 So. 2d 628 (Ala. 2000) (punitive damage awards ranging from $178,538 to $250,000 in fraud action); Prudential Ballard Realty Co., Inc. v. Weatherly, supra, (award of $750,000 of punitive damages in fraud action); Oliver v. Town, 770 So. 2d 1059 (Ala. 2000) ($249,000 award of punitive damages in conversion action); Chrysler Corp. v. Schiffer, 736 So. 2d 538 (Ala. 1999) ($150,000 award of punitive damages in fraud and breach of contract matter); Life Insurance Company of Georgia v. Parker; supra, ($150,000 award of punitive damages in insurance fraud matter); Patel v. Patel, 708 So. 2d 159 (Ala. 1998) ($225,000 award of punitive damages in fraud and breach of contract matter); Talent Tree Personnel Srvs., Inc. v. Fleenor,

708 So. 2d 917 (Ala. 1997) ($1,500,000 award of punitive damages in fraud and breach of contract matter); American Pioneer Life v. Williamson, 704 So. 2d 1361 (Ala. 1997) ($750,000 award of punitive damages in fraud and breach of contract case); Union Sec. Life Ins. Co. v. Crocker, 709 So. 2d 1118 (Ala. 1997) ($1,000,000 award of punitive damages in insurance fraud matter); Life Ins. Co. of Georgia v. Johnson, supra, ($3,000,000 award of punitive damages in insurance fraud action); Hillcrest Center, Inc. v. Rone, 711 So. 2d 901 (Ala. 1997) ($94,000 award of punitive damages in fraudulent inducement action); First Commercial Bank v. Spivey, 694 So. 2d 1316 (Ala. 1997) ($500,000 award of punitive damages in fraud and breach of contract matter); Gallant v. Prudential Ins. Co. of America, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $33,000,000 in punitive damages); Ford Motor Co. v. Sperau, 708 So. 2d 111 (Ala. 1997) ($1,792,000 in punitive damages); Johnson v. Mercury Finance Co., CV-93-52, in the Circuit Court of Barbour County, Alabama, Clayton Division (plaintiff, buyer of used cars, alleged that defendant fraudulently failed to disclose a $1,000 discount for which defendant purchased the non-recourse note; jury awarded $90,000 in compensatory damages, and $50,000,000 in punitive damages, the award of punitive damages was remitted to $2,000,000.); Key v. Prudential Insurance Co., et al., CV-93-479, in the Circuit Court of Marshall County, Alabama (August 28, 1995) (the plaintiff alleged that the insurance agent misrepresented that no additional premium payments would be required; jury awarded $25,000,000 in punitive damages.); Parham v. Foremost Insurance Co., 693 So. 2d 409 (Ala. 1997) (jury awarded $6,000 in compensatory damages, and $7,500,000 in punitive damages; the punitive damages were later remitted to $175,000.). Consequently, the amount in controversy requirement has been established.

See e.g. New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2001) (awarding $100,000 in compensatory damages, the majority of which for mental anguish, in conversion action); Prudential Ballard Realty Co., Inc. v. Weatherly, 792 So. 2d 1045 (Ala. 2000) ($250,000 compensatory damage award, mostly attributable to mental anguish, in fraud matter); Jeter v. Orkin Exterminating Company, Inc., 832 So. 2d 25 (Ala. 2001) ($300,000 mental anguish awarded in fraud and breach of contract matter); Oliver v. Towns, 770 So. 2d 1059 (Ala. 2000) ($67,800 metal anguish award); New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2000) (in a conversion claim, more than half of the $100,000 award of compensatory damages was attributed to mental anguish); Sparks v. Cash America International, Inc., 789 So. 2d 231 (Ala. 2000) (in fraud and breach of contract claim, $50,000 of the $75,000.00 compensatory damage award was attributed to mental anguish); Liberty National Life Ins. Co. v. Caddell, 701 So. 2d 1132 (Ala. 1997) (awarding $50,000 in compensatory damages for mental anguish resulting from alleged conversion); Hare v. Mutual Savings Life, CV-94-529, 1997 WL 743899 (LPR JURY) (awarding $500,000 in compensatory damages for alleged insurance fraud where primary injury was emotional distress); Mallard v. Countrywide Funding Corp., CV-95-199, 1997 WL 743898 (LRP JURY) (awarding $1,000,000 in compensatory damages to two Plaintiffs for emotional distress caused by fraud); Ball v. ALFA Realty, Inc., CV-95-103, 1997 WL 850611 (LRP JURY) (awarding $100,000 in compensatory damages for emotional distress suffered as a result of fraud); Norwood v. Glen Lanes Realty Co., CV-96-391, 1997 WL 996325 (LRP JURY) (awarding $200,000 in compensatory damages for emotional distress resulting from fraud); Gallant v. Prudential Ins. Co. of America, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $430,000 in compensatory damages for alleged insurance fraud); Sperau v. Ford Motor Co., CV-91-34, 1994 WL 180700 (LRP JURY) (awarding $4,492,000 in compensatory damages to four

acknowledged that the citation of analogous cases suffices to show that the amount in controversy more likely than not exceeds the jurisdictional requirement. See Owens, 289 F. Supp. 2d 1319 (after careful review of the cases cited by the defendant, the Court concluded that said defendant had sufficiently demonstrated that the amount in controversy requirement had been met.); Fowler, 256 F.Supp.2d at 1249 (same); Bullock, 165 F. Supp. 2d at 1259 (same).

Relying on cases such as Bennett v. American Medical Security, Civil Action No. 02-D-120-N (M.D. Ala. Feb. 8, 2002) and Fabritis v. United Wisconsin Life Insurance Co., Civil Action No. 02-T-820-N (M.D. Nov. 1, 2002), Plaintiff contends that Defendants failed to establish that the amount in controversy requirement has been met. However, the only evidence that the Bennett defendants used to show that the damages in the case were likely to exceed the $75,000 requirement was a blanket assertion in a footnote that she had satisfied her heavy burden. Bennett, No. 02-D-120-N, at *2. Similarly, the only evidence that the Fabritis defendants used to show that the damages in the case were likely to exceed the $75,000 requirement was the unsupported assertion in their removal notice that Jury awards in cases on the same type of suits routinely exceed $75,000. Fabritis, Civil Action No. 02-T-820-N, at *4. By contrast, Defendants here have provided the Court with ample support for the proposition that the amount in controversy requirement has been met. See Owens, 289 F. Supp. 2d 1319; Fowler, 256 F.Supp.2d at 1249; Bullock, 165 F. Supp. 2d at 1259. As such, this Court should find that the amount in controversy requirement is satisfied in the present action.

---

Plaintiffs for emotional distress allegedly caused by fraud). Consequently, the amount in controversy requirement is easily satisfied in the case at hand.

### III. FEDERAL QUESTION JURISDICTION ARGUMENT

With its recent decision in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, --- U.S. ----, 125 S.Ct. 2363 (2005), the United States Supreme Court reaffirmed the validity of embedded federal question jurisdiction under 28 U.S.C. § 1331 and expanded its reach beyond previously established boundaries. Thus, the pre-Grable decisions cited by Plaintiff in her Motion to Remand are largely inconsequential and may only be considered, if at all, in the context of the Court' new, more expansive interpretation of embedded federal question jurisdiction.

Grable established a three-prong test for determining the existence of federal question jurisdiction in those instances where state-law claims implicate significant federal issues. First, the federal issue must "actually be in dispute." Id. at 2369 n.3. Second, the federal issue must be "a substantial one." Id. at 2367. Third, the federal jurisdiction must be "consistent with congressional judgment about the sound division of labor between state and federal courts." Id. As demonstrated in detail below, each of these prongs is satisfied herein, and this court has embedded federal question jurisdiction over the present action.

### A.    The Present Action Involves Disputed Federal Issues.

In her Complaint, Plaintiff alleges that Defendants misrepresented and/or suppressed certain information regarding the financial benefits and optional nature of purchasing credit insurance and refinancing prior debt. (See Plaintiff's Complaint, ¶¶ 13-22). Though she does not explicitly plead federal causes of action denominated as such, Plaintiff's allegations and the lending practices invoked thereby are extensively regulated by federal law, including: the federal Truth in Lending Act, 15 U.S.C. § 1601, et. seq.; Regulation Z, promulgated thereunder; 12 CFR § 226.1, et. seq.; and 12 CFR § 590.101, promulgated thereunder. Accordingly, Plaintiff's right

to recover under her putative state law claims turns, in many instances, on whether Defendants complied with this federal regulatory scheme.

For instance, Plaintiff has asserted negligence-based claims in the present action. These claims require Plaintiff to prove (1) a duty or standard of care; (2) breach of that duty or standard; (3) proximate cause; and (4) damages. Plaintiff cannot, however, prove a duty of care or breach of that duty unless she establishes a violation of TILA and Regulation Z with respect to his disclosure-related claims. Thus, the validity of, at the very least, Plaintiff's negligence claims likely turns on Defendants' compliance with federal law.

The issue of Defendants' compliance with TILA and Regulation Z is sure to be disputed throughout the present action. Defendants contend that the loan documents provided Plaintiff and the disclosures contained therein satisfy all of the requirements set forth in TILA and Regulation Z. Specifically, the loan documents make the following disclosures in accordance with Regulation Z: the annual percentage rate (See 12 C.F.R. § 226.18(e)); the amount financed as well as the finance charge (See 12 C.F.R. § 226.18(b)-(d)); and the total of payment, the amount of monthly payments, and the total number of payments. (See 12 C.F.R. § 226.18(g)-(h)). Furthermore, the loan documents at issue comply with TILA, which states that in those instances where the cost of credit related insurance is not included in the finance charge -- which it was not in the loans at issue -- then the lender must disclose that "insurance coverage is not required by the creditor…[,]" 12 C.F.R. § 226.4(d)(1)(i), which Defendants did disclose in the loans at issue.

Given the above, the first prong of Grable's embedded federal question analysis is clearly satisfied in the present action.

**B.**      **The Disputed Federal Issues in Question are Substantial.**

The Grable Court held that federal issues are substantial where there is "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Id. at 2367. One such advantage offered by a federal forum is the "hope of uniformity." Id. In those fields that are heavily regulated by federal law, such as the consumer lending industry, uniformity in the application of a detailed regulatory scheme is, in and of itself, a substantial federal interest that warrants the imposition of federal jurisdiction. In fact, the Fourth Circuit has specifically held that "[w]here the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts." Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 807 (4th Cir. 1996) (citations omitted).[14]

A state court's resolution of the federal issues in the present action could facilitate conflicting interpretations of TILA and Regulation Z and, in turn, undermine the stability of this statutory regime. Therefore, there is a serious federal interest herein in claiming the advantage of uniformity inherent in a federal forum. As such, the disputed federal issues herein are substantial, and the second prong of Grable's embedded federal question analysis is satisfied in the present action.

---

[14] In resolving the circuit split regarding whether Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804 (1986), always requires a federal cause of action as a condition for exercising federal question jurisdiction, the Grable Court sided with, and thus implicitly endorsed, Ormet. See Grable, 125 S.Ct. at 2366 n.2.

**C.**   **Exercising Federal Jurisdiction in the Present Action Will Not Conflict With the Sound Division of Labor Between State and Federal Courts.**

Lastly, Grable states that, in determining whether embedded federal question jurisdiction exists, a Court must consider whether its exercise of federal jurisdiction will conflict with the sound division of labor between state and federal court. Id. at 2367.  Grable highlights three factors that may be relevant to this "sound division of labor" standard.  The first consideration is whether there is a private right of action under the federal statute at issue.  See id. at 2369-70. Here, TILA provides such a private right of action.  See 15 U.S.C. § 1640(a), (e) ("[A]ny creditor who fails to comply with with any requirement imposed under this part ... with respect to any perosn is liable to such person...." and the cause of action "may be brought in any United States district court..."). The second consideration concerns the preemptive effect of the federal statute at issue.  See id. at 1270.  This factor also weighs in favor of federal jurisdiction as TILA preempts all state regulations to the extent that they conflict with its provisions.  See 15 U.S.C. § 1610.   The third and final consideration is whether exercising federal jurisdiction would "materially affect, or threaten to affect, the normal currents of litigation."  Id. at 1271.  Federal courts already routinely hear numerous TILA-related cases.  As such, exercising federal jurisdiction in this and other similar cases should not overwhelm the federal judiciary.  This is especially true in light of the fact that, as demonstrated above, Mississippi Courts have routinely denied motions to remand in virtually identical cases and are now in the process of either granting summary judgment for the defendants, or dismissing the plaintiffs' meritless claims.

Given the above, the third and final prong of the Grable standard is clearly satisfied in the present action.  As such, this Court should exercise its embedded federal question jurisdiction and deny Plaintiff's Motion to Remand.

## IV. <u>CONCLUSION</u>

Based upon the foregoing, this Court has diversity and embedded federal question jurisdiction over the present action, and Plaintiff's Motion to Remand is due to be denied.

Respectfully submitted,


<u>/s/ Matthew T. Mitchell</u>
Robert H. Rutherford (RUT002)
David A. Elliott (ELL027)
Matthew T. Mitchell (MIT050)

Attorneys for Defendants

**OF COUNSEL:**

**BURR & FORMAN LLP**
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2006, I electronically filed the foregoing Opposition to Plaintiff's Motion to Remand with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Jere L. Beasley, Thomas J. Methvin, C. Lance Gould, Thomas Julian Butler, Matthew T. Mitchell, Robert H. Rutherford, Jeffrey M. Grantham, and John Thomas Aquina Malatesta.

/s/ Matthew T. Mitchell
OF COUNSEL